My name is Cody Keyes. I represent the Pulaski County Special School District, as well as board members Dr. Linda Rimley and Alicia Gillum here today. A superintendent of schools that learns of disparities in the construction of district facilities and reports the same to the school board and the district court is not engaging in protected activity because that activity does not relate to an employment practice. Your Honor, that is a central question that we present today. Was this an employment practice that Dr. Warren engaged in? And the case law is... How was this case presented? How was it presented to the jury? Is it a Title VII case or a case under Section 1981 or both? It was both. Your Honor, the jury instructions are difficult for the appeal court to... I agree with that. ...to look through. That's what the district court decided in an effort to try to streamline the case. There were a lot of causes of actions presented by Dr. Warren. My understanding of the jury instructions were that the retaliation, which is the only cause of action the jury found in Dr. Warren's favor, were combined under 1981 retaliation and Title VII. But the jury instructions do not say that, Your Honor, which causes some consternation with the punitive damages piece as to whether the board members... It causes me some consternation even before that. With respect to your argument, I get your argument with respect to Title VII. Okay, it's not an employment practice that she was complaining about. I get that. I'm not so sure that argument works. And maybe I'm wrong and you can correct me. I'm not so sure it works if the case was submitted under 1981. So the Evans case, which is the case we rely on for the argument that this is not an employment practice, in that case there was a 1981 claim as well. And in that case the court said you look at them the same. Yeah, but isn't it at least arguable that the Supreme Court overruled Evans, at least in part with Humphreys, by saying you do have a claim if you complain about somebody else's civil rights? I still think Evans, not disregarding your comment on Humphreys, I still think Evans is applicable because it's directly in the employment context. And they're identical, almost identical, in that that employee was complaining. And he alleged that it was because he stood up or advocated for students, much the same as Dr. Warren advocated for facilities. Evans is key, though, because the court said there you look at them the same. Well, okay, she's not just advocating for facilities. She's advocating for equal facilities. And so isn't that arguably advocating the civil rights of someone else? No, Your Honor, because the evidence and the jury instruction, which was submitted by the court, it specifically said reported a disparity between the construction of Mills High School and Robinson Middle School to PCSSD, its lawyers. So she's locked in there. You're boxed in. That is the protected activity she's alleging, disparity of facilities. That's not an employment action based on long-held precedent of this court. Well, okay. And maybe I'm wrong about Humphreys. Maybe you can correct me there. But it seems to me Humphreys opens the door for a civil rights claim under 1981 based on asserting the civil rights of third parties. And here, arguably, it's the students who got unequal facilities. Well, if we go to the text of 1981, 1981 protects in extra contracts. It's been amended. At one time, we had pretty much drawn the line that you could only use 1981 up until the employment began. And then they amended it in the 90s with the Civil Rights Act. And it says now, make and enforce contracts, including the making, performance, modification, termination of a contract and all benefits. So if you look at Humphreys, which is exclusive to 1981, then she still didn't engage in protected activity because there was no contractual relationship. She didn't advocate for an employee. All the cases that we've cited, and the court has taken this up many times. Okay, but what about this? And maybe I'm wrong, and you can correct me. But she's advocating for the civil rights of the students who got the unequal facility, okay? The contract is her employment contract. Why doesn't that work? Okay, so you're not protected because you advocated for something on yourself. Because let's say that you alleged that you were discriminated against. Somebody made a sexually derogatory comment. It wouldn't be retaliation. You would just have a claim for discrimination based on that action. All the cases that have taken up have said you have to be advocating for the rights of someone else. And Evans and Artis, both Eighth Circuit courts, both in the context of an administrator or teacher advocating for students, said that's not it. You have to have an employment practice. Go back to the text of Title VII. It says employment practice. So, and I also would argue, Your Honor, she was… I agree with you on Title VII. That's the problem I have. The case wasn't submitted in a clear way, whether it was being submitted under Title VII or 1981. Well, I would submit to the court that the analysis v. Evans is the same. He had a 1981 claim, and he in fact argued that, oh, wait, if this is not an employment practice, 1981 gives me greater protections. And this court said no. And then even looking at Humphreys, you still need to go back to the text of 1981. Dr. Warren is protected if she is enforcing rights under 1981, which is contract. What's the contract that she's advocating for here? Here, she was advocating for the disparities of facilities, which is not an employment practice. Well, is the question, is it employment practice or a contract? It's neither, Your Honor. Right. It might not be either, but… I think the question is whether under the text of Section 1981, the contracting question can be her own employment contract or if it's another contract. I understand. I think maybe that's the issue. Your Honor, that would be an expansive holding of 1981 that I'm not familiar with, any court holding, and that would essentially give an employee protections any time they did anything because they would just simply say, I advocated for better school buses to be in low-poverty neighborhoods, and I did it while I was under contract, so therefore I was doing it. Then every employee would always have a potential retaliation claim under 1981, and I don't think Humphreys reads it that expansively. I also have trouble thinking that this court can, seeing that the jury instructions did not say Title VII or 1981, clearly the case sounds in Title VII. All administrative processes were done under Title VII, so I think it's safe to look at Evans, where we actually had 1981 and a Title VII, and this is how this court handled it. So another issue would be if we're going to allow an expansive reading of Humphreys to cover any time you might be advocating for someone else's rights or you're advocating for something, buildings wouldn't be someone, but if you're advocating for buildings, equal buildings, then I'm doing it under my contract, well, then the whole good faith, reasonable, yet mistaken belief, is that even applicable? And I think that is applicable. So this court, in multiple instances, has said, okay, you thought you were engaging in protected activity by advocating for the rights of an employee, but it turns out that really wasn't discrimination. It still has to be a good faith, reasonable belief that you were advocating for an employment practice. I'll take you to the Lopez case, Your Honors, which two members of the panel were on the Lopez case, 898F3D656. Again, I concede it's a Title VII case. But there, the plaintiff was terminated, and she stated, well, I was terminated, but it's because I had brought issues to my manager's attention about sexual disparities or sexual inequality. And Judge Grass writing for the majority there said the evidence actually shows she was complaining about feeling unqualified for her assigned task. She did not tie that complaint to any discrimination, let alone sex discrimination. A plaintiff, quote, must show an objectively reasonable belief that an actionable Title VII violation has occurred for her complaint to qualify as protected activity. Can I ask you some questions, some more details about the report? And you've described it as the disparity in the facilities between these two schools. That strikes me as different than something like Evans where a teacher stands up and speaks out on behalf of a student or a subclass of students. The facilities actually include everyone. So anyone, any school employee who is working in those facilities, the one who has the lesser quality facility, the one who's been constructed with worse materials, is smaller, doesn't have the rooms. Now, wasn't there evidence that the one school, they didn't even have some of the rooms for the administrative people that the other school did? Why doesn't that include, we've been talking about, well, it's the kids. Of course it's about the students, but the teachers, the employees, the administrative staff, the coaches, they're all listed as being affected as well. Why isn't that a broader report of disparity and discrimination and concern than just speaking out about particular students and whether they may be admitted to a school? Well, the parallels are Evans was a desegregation plan. And the teacher, when he was complaining about disparity and discipline, it was actually because the principal, a new principal, had said, we're going to do this. But that was in line with the desegregation order there. And here we have something where we've got a desegregation order. And I think everyone agrees that the actions alleged were in direct contradiction to that desegregation order. Yes. Yeah, we've never taken the position that the desegregation order wasn't violated as to facilities. But, Your Honor, the plaintiff had those opportunities to make that tie. And she never did it at trial or in the evidence. It was always that the students, it was the inequality of the buildings. And the athletic programs came up a lot about athletic facilities being. Well, did the jury hear testimony about the disparate quality and size of the administration's offices? I see in there that there's the coaches. And I'm focusing on those because those are the non-student focused ones. So the question would be, if the jury heard that, would that be enough? Now we're post-jury trial. We're on a different record. So if the jury heard it, would that be enough? Your Honor, and I'd have to rely on the record fully. I was there for the two-week trial and the 20-plus witnesses. I don't recall testimony as to an administrator or educator being impacted. Because, candidly, that evidence wasn't put on in great detail because the district conceded that there were issues with the desegregation plan that it had taken great strides to remedy. So is that evidence? You know, you can. Parties can concede. And other times, you know, parties can stipulate for the jury. And it may not be that evidence comes in. But everybody agrees. This is unequal. And it's unequal for everybody who comes into these facilities. Your Honor, I appreciate the questions to see if there is a difference. But that would carve out a significant exception to the Title VII language that this court has never done. And the court has had opportunities to expand. What exception would it carve out if it actually does address sort of the employees' rights to equal facilities, equal environment to work in? Well, let's look at Evans and Artis. When this court had the opportunity, student discipline impacts teachers. I know the teachers have a much more suitable teaching experience if the students are being disciplined appropriately. We're talking about facilities. We're talking about tangible size and quality, right? Although that is not in the record, I think it's safe to presume, based on maybe some testimony, that, yeah, we're talking about size of facility, and that may impact teachers. But student discipline impacts teachers. And student discipline impacts a teacher's ability to do their job. And this court in Evans and Artis said that just doesn't chin the bar as an employment practice. It doesn't directly relate. And Artis uses a good term. It says that it's outside the ambit of an employment practice. So we would take the position that this court has never gone that far as to say something like facilities would impact an employee. And if this court read that, it would be an expansive reading that would essentially change the law of this circuit, as established in Evans and Artis. I also want to look at the good faith reasonable basis. Because it appears the court in the order, and we raised this multiple times, and of course the court denied our motion for summary judgment, directed verdict, and then the JNOV. But in the JNOV, Judge Miller addresses our argument about whether this is an employment practice. And it seems to suggest the court conceded it was not. And then he said, but a plaintiff can have this reasonable good faith basis. But if you look at all the cases, and you really have to go back to Cisco, the 1981 cases, the first time this court actually took up an opinion involving the good faith reasonable belief, although mistaken. Mr. Cisco was mistaken that the employment practice was not discriminatory, but it was an employment practice. And just briefly, Mr. Cisco was an employee. The business was under an affirmative action plan. And he complained about the affirmative action plan. He was a white employee who was impacted. He complained. Ultimately, he was terminated. And at the time, in 1974, affirmative action plans were not legal per the Eighth Circuit. But by the time his case got to the Eighth Circuit, a prior case, the Setzer case, had determined that affirmative action plans can be legal. So when it ultimately got, when he had his day in court, they said that was a good faith reasonable belief that that employment practice was unlawful, although we know now it wasn't. Look at it, though, Your Honors. That actual employment practice, it was actually an employment practice. And then every case subsequently, including Lopez's case, which two members of the panel were on, Bute, Nervi, Eastern, Arch, Cole, 216, F3D, 707, they all, every time this court has used that exception or used that as a good faith mistaken belief, the employee was actually mistaken about an employment practice, which we don't have here. Your Honor, I would also point out that this is an objective standard. So you wouldn't look at what Dr. Warren thought, but you'd look at it in terms of all of the things going on, and we are guided by our case law. I want to talk briefly about, so we're talking about, and I didn't mention this because I know the court is aware, this is the McDonnell-Douglas framework. She has to prove a protected act. If she doesn't, which we believe she has not, then she can't advance. Even if she has, there's the adverse employment. It's difficult to find a case where this circuit has said that the activity has said that these facts would be an adverse employment action. So I remind you that Dr. Warren was an interim superintendent. Excuse me, she was an assistant superintendent over, amongst other things, desegregation. She was appointed to the interim superintendent on an interim basis, and when she was not ultimately hired for the position, she was returned to her position that she still holds today as assistant superintendent. Same pay and benefits. I'm hard-pressed to find that this court has ever said in those circumstances that's actually adverse employment action. Failure to get a final interview and then to not get the permanent position, but you're returned to your position that you held before, we would argue that's not adverse employment action. I also want to talk to you about punitive damages. Your Honors, if you find that there's not a viable Title VII or 1981 claim, which we're asking you to, then I think it's undisputed that all damages would go away. If you were to find that there's a viable claim, I'd want the court to look strongly at the punitive damages here. It's difficult to see exactly how the courts have come down on 1981 and 1983 damages. We know Title VII does not allow punitive damages, so it would have to be under 1981, which was submitted to the jury, but we don't know which one they ruled on. There's case law that says that you're presumed to be sued in your official capacity. Here, the jury verdict didn't say, so I think there's a presumption that they were sued in their official capacity, and under the Jett case that we've detailed for you, there can be no punitive damages against an official capacity 1981 claim. Arguably, that goes away. The only way is if this court was to determine, despite the jury verdict not saying it, they were sued individually. Well, that raises issues of they notice. There's the Nix v. Norman case that says if an individual is going to be sued in their individual capacity, they have to have notice. The jury did not know, and so I think that's a failure of constitutional rights that cuts against a punitive damage award. Mr. Keyes, you may continue, but you're well into your rebuttal. Was there 20 up at the beginning? Wow, this time goes faster. You're having fun, judges. I'm going to reserve my time. Very well. Mr. Cain. Good morning, Your Honor. May it please the court. I'm Terrence Cain. I represent Dr. Warren. Your Honor, this case was litigated as a Section 1981 case and a Title VII case. In fact, Judge Miller, on April 21, 2022, entered an order denying the school district's post-verdict motion for judgment as a matter of law. In the very first paragraph, he says that Dr. Warren unambiguously brought her Section 1981 claim under Section 1983, which, of course, she's required to do because, with respect to state actors, there's no stand-alone Section 1981 claim. One has to use Section 1983 to press that Section 1981 claim. Now, the verdict forms don't say Title VII or Section 1981, and if they were ambiguous, then it was up to the school district to clarify that ambiguity in the first instance before the district court or to raise in its brief that there was an ambiguity in the verdict form. There's nothing in the briefing of this case where the school district has challenged the verdict form as being ambiguous. And if there is an ambiguity in the verdict form, given the standard of review here, this isn't a court sitting in the first instance. This isn't a court sitting as a finder of fact. This is a court asking, could a reasonable person have reached the conclusion that the jury did? Now, given the fact that the jury assessed punitive damages against two board members, there would have to be a Section 1981 determination because Title VII doesn't authorize individual liability of any kind. Title VII doesn't authorize individual liability. But the jury has no idea about that, right? So the jury is not going to know. But the jury was instructed on what to consider, how the case was litigated. As Mr. Keyes said, it was a lengthy trial. And then the school district, if there were- Let me ask this. Let's talk about under Title VII. There has to be, for the retaliation claim, there has to be a challenge to discriminatory employment practices. Correct. What's the employment practice that she complained about for which she was retaliated against? The employment practice that served as the basis of her complaint was she's the superintendent of a school district that's a defendant in a four-decade-old school desegregation case that has been adjudicated as a constitutional violator. There's one superintendent, unlike Mr. Evans and Mr. Artis, who were teachers, there's a singular superintendent in a school district. And for this particular school district, every superintendent since 1982 has taken it upon himself or herself to ensure that the district complies with desegregation orders and to do his or her best to ensure that the district is declared unitary and freed up from judicial supervision. That's a duty of the job, perhaps. Yes, Your Honor. But is that an employment- I mean, at least traditionally, and I think you run into the Evans case, right? I mean, you think about an employment practice being challenged as you didn't hire this person because of their race. And then there's a retaliation. This is you were proposing to build unequal facilities in violation of the DESEG order. I'm having a hard time seeing how that is complaining about an employment practice. The employment practice is if a superintendent, in effectuating his or her duty, to see to it that the district complies with the Constitution and is retaliated against for doing so, then that's a signal to a superintendent that one of the aspects of your job, if you do it in a way that's displeasing to two board members, then the board would take retaliatory action against you. Now, if that's not true as a matter of law, the question then turns to you were mistaken, but was it a reasonable mistake? Would a reasonable superintendent of a school district that has been adjudicated a constitutional violator, that is a defendant in a four-decade-plus-old school desegregation case, and that took the job, committing to doing her level best to extricate the district from federal court supervision, is it reasonable to think that she has a duty to report noncompliance in terms of a disparity in facilities where the district had not been declared unitary? Is it reasonable to think that I have a duty to blow the whistle on that? And then once I do, if retaliatory action is taken against me, am I reasonable to think I'm complaining about an employment practice? Okay, I think the latter is right, whether it's reasonable to think that that was an employment practice, a discriminatory employment practice. Because even if she was in error in thinking that this was an employment practice but it wasn't, again, this is the superintendent, this is not a lying teacher, not to disparage teachers, but teachers don't enter into employment with the school district and have an express duty of theirs to make sure the district complies with school desegregation mandates. Every superintendent does. In fact, the current superintendent, one of the reasons he was ostensibly chosen was because of the promise that he held out that he would be effective in ensuring that the district met its desegregation obligations and would be declared unitary and therefore free from federal court supervision. And so the superintendent is on a different footing than the music teacher and artist or the teacher and evidence. So in your view, the good faith option for this would apply to both whether there was discrimination and whether it was actually an employment practice on both prongs? Yes. And if she was mistaken, and this court can say, well, you were mistaken, then it would have to be was it a reasonable mistake. As to either one of those steps. As to either one. And then I would say step back for a second. What we are here doing, we did pretrial and summary judgment practice. The district court denied the motion for summary judgment. There was a multi-week trial. And the jury heard the case and decided, resolved these competing versions of the facts, these competing arguments, and now we're here again repeating some of what took place, except this court, again, is not sitting as a fact finder in the first instance. This court is reviewing whether a reasonable person could have reached the conclusion that the jury reached, even if this court, if it's sitting in the first instance, might have reached a different decision. Yeah. Shouldn't these questions, though, have been submitted to the jury? In other words, shouldn't the jury have been instructed to decide the question of whether this complaint related to an employment practice or whether she had a reasonably good faith belief that it did? And I certainly didn't see anything in the instructions. The instructions kind of assumed that it is. And if those instructions were inadequate as far as the school district is concerned, the school district had a burden to bring that to the district court's attention, object to the jury instruction, proffer an alternative jury instruction, and then argue on appeal that there was a jury instruction error and that the court didn't instruct the jury properly and rejected the proffered instruction. None of that took place. Good point. Let's talk about 1981 for a second. Okay. You heard my back and forth there. What would be the underlying, you know, let's assume that Humphrey suggests that making a civil rights type complaint involving others is sufficient to qualify. What would be the contract or arrangement that otherwise qualifies under 1981? She wouldn't be complaining about a contract that the students have with the district. They plainly don't. But as I said in my brief addressing what was the underlying premise of her complaint, not just that the facilities were unequal, as Judge Kelly said, with respect to the students, but that administrators who would work in those facilities, support staff who would work in those facilities, they too would be adversely impacted, the Mills persons, because the Mills facility in the predominantly black area was just obviously inferior relative to the Robinson facility in the predominantly white area. She blew the whistle on, look, this, not only are the athletic facilities inferior, but the entire project in terms of the building of the schools are just so obviously disparate that the school district didn't even contest the disparity. And that disparity went to the heart of an area in which the district had not yet been declared unitary. There was still a dual system with respect to facilities in the district. So is your argument that the contract that's affected is the employment contracts of all these other people? Yes, in addition to her own, that the contracts of the administrators and support staff, that any employee in the Mills facility, at the Mills schools, would be adversely impacted by the district making the decision to devote fewer resources, lesser quality materials, basically compared to Robinson, have an inferior facility. Mr. Keene. I'm sorry, was the jury asked to find anything about that? And again, I know your answer is going to be, well, they should have made sure they had better instructions. And you may be right about that, but was the jury asked to make any findings about that effect, that was an effect on a contract? There were no interrogatories submitted to the jury. Well, or element of the claim. I mean, I look at instruction 13, and I think that's kind of the only elements, and it doesn't have anything like that in there. It just kind of assumes all these things inherently. That's correct. And the jury instructions were the fruit of a multi-week trial. So that was tested. Mr. Keene said there were 20-some-odd witnesses. That's certainly the case, and the record all totals thousands of pages. So it's not as if the jury wasn't aware. It's not as if the jury didn't hear argument from witnesses, particularly the current, I'll call him the facilities person, whoever took Mr. Scott, Darris Scott was the person responsible for facilitating the disparity between Mills and Robinson. And he had a successor, Curtis Johnson. There was testimony from Mr. Johnson and from other district witnesses about the extent to which these facilities were unequal. But directly what the jury directly told that to consider those things that you mentioned, not in a direct, overt way. But that hovered over the entire case because, again, this was a lengthy trial. Mr. Keene, this question has been asked, but I'm going to ask it a different way. As I read the language of Section 1981, Dr. Warren would need to have been attempting to vindicate the rights of individuals protected under Section 1981 to make and enforce contracts. Where in the record is there evidence that she was attempting to vindicate the rights of people to make and enforce contracts? She testified that her reason for blowing the whistle on the disparity in facilities were not just for the students, but for the administrators and the support staff who worked in those buildings, too. And that is, she testified that as superintendent, she had a duty to ensure that the constituents of Mills, the employees of Mills, worked in facilities that were on par with the facility in Robinson. So she's writing that as an attempt to make and enforce a contract seems rather attenuating. Well, she didn't say that she didn't use the magic language, make and enforce contract. She was talking about the employment environment in which those persons would work compared to the employment environment in which their colleagues was working at Robinson. But, no, she didn't say, I'm complaining about. Is there any precedent from this circuit or any other circuit for interpreting that language that broadly? I think the Cisco case does from 1981. But, Judge, even if that's not true as a matter of law, that no, Dr. Warren, you weren't advocating for the right of others to make and enforce contracts consistent with what Section 1981 mandates. If she's wrong, then that doesn't end the inquiry. The inquiry then turns to, were you reasonable yet wrong? Would a reasonable person in her position have thought that what she was doing was opposing a discriminatory practice? And I think certainly so, given the particular history, again, of a district. I mean, this case goes back to 1982, this current iteration of it. And at a point in an earlier iteration of this case, the late United States District Judge Henry Woods adjudicated the Pulaski County Special School District as a constitutional violator. And then in 2000, the parties entered into a plan called Plan 2000. And Plan 2000 had as part of it equality of facilities. And from Plan 2000 through the initiation of this case, the district had been declared unitary in part. But where the district was not unitary was in facilities. And Dr. Warren felt that it was her duty as the superintendent of a district that has not been declared unitary with respect to facilities, where there is an admitted disparity in facilities. That is a racial disparity. And make no question about that. This was a racial disparity. Does she have a duty to bring attention to that? And in the course of doing so, say not just because of the athletes who would be using athletic facilities, but again, teachers and support staff and administrators who work at those facilities. Is it reasonable to think she is opposing something that is racially discriminatory? You just said that I understand cases have used this reasonable belief idea in the Title VII context. Are you aware of any cases that do so in the 1981 context? Cisco. From this court in 1981. Okay. In my last moments, Your Honor, I'd like to turn to, and of course I'll take any questions in the meantime. The question of the equitable relief that the district court did not grant Dr. Warren. Now once a person has established that he or she has suffered retaliation, there is a presumption that she is entitled to full relief. Dr. Warren did not get front pay, and though she asked for it, nor was she awarded or ordered that she would be given the right to, or the option, that when there is an opening, she would be offered that opening before it's offered to somebody else. The district court denied that relief on the ground that, according to the district court, she didn't mitigate her damages. The only mitigation evidence in the record is a brief colloquy between the district's lawyer and Dr. Warren, where the district lawyer posited, did you know in 2021 there was an opening in the Conway School District? Dr. Warren said, yes, I am aware. And that was pretty much the end of it. There was no evidence put in the record that there genuinely was an opening. And if there was an opening, how was that opening, if it existed, comparable to what was in the Pulaski County School District? And that was the end of it. So given the fact, and the burden on proving a failure to mitigate is not on the plaintiff employee, it's on the defendant employer to put on evidence, put it in the record, that shows here was a comparable opportunity for employment. Comparable in all material respects. You made no effort to pursue it, therefore you failed to mitigate your damages. That case simply was not put on. And therefore, it is my considered view that Dr. Warren was entitled to the full relief that she was presumptively should have been given once she established that she had been retaliated against. What about the district court? I got the sense, when it viewed the verdict form, that the jury had sort of concluded that and thought that if he ruled in your favor, it would be in contradiction to the jury's verdict. Can you address that? He did, the district court did make that finding on the premise that, in the district court's view, there was sufficient evidence of a failure to mitigate. So it still circles back to your point that your belief that that was the only evidence in the record? Correct, absolutely, Your Honor. Would you address the punitive damage question, whether the two individuals were sued individually, and if not, can punitive damages be awarded in official capacity? And then whether punitive damages, I think it's pretty clear punitive damages are not available under Title VII against individuals, right? Correct, absolutely. So, and then whether they are available under 1981? They are available under Section 1981, and I learned that the hard way from the Sharon Sanders v. Lee County School District No. 1 case, where this court affirmed punitive damages awards against school board members in their individual capacity. Okay, so then I guess we have to get to that. Right. Were they sued in their individual capacity? They certainly were, Your Honor. On district court docket No. 191, which is Judge Miller's April 21, 2022 order, denying the district motion, post-verdict motion for judgment as a matter of law, Judge Miller says that the, because the school district says that Section 1981 does not permit retaliation claims against state actors except those brought through Section 1983. Judge Miller said that that argument fails because she unambiguously brought her Section 1981 case through the vehicle of Section 1983, which was her second amended complaint, paragraphs 67 through 70, district court docket No. 65. So they were named, Ms. Gillen and Ms. Remily, they were named in their individual capacities. Okay, so that's the key. I mean, does it say, does it use the magic words? It does, absolutely. They're being sued in your individual, okay. Both in the caption of the second amended complaint and in the body of the second amended complaint, it is crystal clear that this is using Section 1983 to pursue a Section 1981 individual capacity claim against these two board members. Okay. If there aren't any more questions, I thank the court for its time. Thank you, Mr. Cain. Thank you, Your Honors. A couple of quick things, Your Honor. On the front pay issue, mitigation was a jury instruction, and it's very clear from the verdict, as Judge Miller referenced, she was awarded half of her request. She requested four years of back pay. She was given two. And there may have been limited evidence on her mitigation because most trial lawyers don't like to get into the damages, but her testimony is sufficient. And she testified she had not applied for other jobs, including Conway, that she had been contacted by this headhunter firm that did our process and that she did not have an interest in leaving PCSSD. The jury heard that. It was submitted to the jury. They only awarded her half her back pay. So there's more than sufficient evidence to uphold that the front pay was not awarded. This two-prong analysis that Judge Kelly had, I want to talk to that. It's not an either-or. You have to have an employment practice and a good-faith basis to believe that that employment practice was violated. Is that – do you say that because that's the way the cases have come out before that's sort of been the focus of the good faith? Or is there a case that actually says that? No, Your Honor, that's been the focus, including Cisco. Cisco was an employment case where an individual was advocating for someone's employment. That's where I go to that, Your Honor. With that, my time is out. Thank you, Your Honors. Thank you, Mr. Keyes, and thank you, Mr. Cain. We appreciate your appearance and argument today. The case is submitted and we'll issue an opinion in due course.